IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| CALVIN HENDRIX, #231316, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 3:09-2275-TLW-JRM |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| WARDEN BROAD RIVER ) | |
| CORRECTIONAL INSTITUTION, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

Petitioner, Calvin Hendrix ("Hendrix"), is an inmate at the South Carolina Department of Corrections serving a sentence of twenty-six years for first degree lynching. Hendrix filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the Court on August 27, 2009. Respondent filed a return and motion for summary judgment on February 12, 2010. Because Hendrix is proceeding *pro se*, an order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) was issued on February 16, 2010 advising him of his responsibility to respond to the motion for summary judgment.

Hendrix did not file a response to the motion for summary judgment despite the notice given to him in the <u>Roseboro</u> order. On April 15, 2010, the undersigned issued another order requiring Hendrix to advise the Court if he wished to continue his case. When no response was received, the

undersigned issued a Report and Recommendation that the within action be dismissed with prejudice pursuant to Rule 41(b), Fed.R.Civ.P. Thereafter, Hendrix filed an objection generally stating that he did not understand the process and he wanted his case to continue. On July 1, 2010, the Honorable Terry L. Wooten, United States District Judge, issued an order remanding the case to the undersigned and advising Hendrix of the need to file a summary judgment response within twenty days. Hendrix has still not filed a response to the issues raised by Respondent.

**Background and Procedural History**

On August 28, 1998, Hendrix and two friends, Patrick Williams ("Williams") and Karim Smith ("Smith"), beat, kicked and shot Ervin Jones in Richland County, South Carolina. Hendrix, the alleged "trigger man," was charged with murder. Hendrix proceeded to trial on April 22, 1999. He was represented by Robert M. Sneed, Esquire. A mistrial was declared after the jury was unable to reach a unanimous verdict. Both Williams and Smith were called as witnesses by the State.

Apparently, the State obtained an indictment for "Lynching - 1st Degree" during the trial (App. 70), and it was served on Hendrix immediately after the mistrial. A pretrial motions conference was held on June 14, 1999. (App. 4). Before a jury could be selected the following day, Hendrix entered a negotiated plea to the lynching indictment, and the murder charge was dismissed. (App. 44). Hendrix continued to be represented by Mr. Sneed, and the same judge presided over all proceedings. No direct appeal was filed.

Hendrix filed an application for post-conviction relief ("PCR") on May 9, 2000. (App. 94). An evidentiary hearing was held on July 27, 2001. (App. 106). Hendrix was represented by Tara D. Shurling, Esquire. Hendrix, Mr. Sneed, and Assistant Solicitor David M. Pascoe, Jr., Esquire, testified. The PCR court issued an order of dismissal on August 6, 2007. (App. 182). Ms. Shurling

filed a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP, on February 14, 2008. (App. 193). The motion was denied by order filed March 24, 2008. (App. 21).

A petition for writ of certiorari was filed in the South Carolina Supreme Court through the South Carolina Office of Indigent Defense raising the following issue:

> Whether the PCR court erred by finding the record was devoid of any indication that counsel misadvised petitioner concerning his guilty plea where defense counsel testified, and the order found, that counsel believed petitioner could preserve pre-trial issues for appeal even though he was pleading guilty, since this was a blatant mischaracterization of the law, and petitioner testified he would not have pled guilty if he had not been misadvised about his ability to appeal these issues, and this constituted ineffective assistance of counsel?

The petition for writ of certiorari was denied by the South Carolina Supreme Court on June 10, 2009. The Remittitur was returned on June 29, 2009. Hendrix filed a *pro se* petition for rehearing and to recall the Remittitur which was dated July 1, 2009. The motion was denied because it was untimely, the Supreme Court's jurisdiction having ended with the return of the Remittitur. The court explained the only exception to the rules which would allow the recall of the Remittitur was when it "is sent down by mistake, error or inadvertence of the Court." Thus, there was no basis to recall the Remittitur.

### **Grounds for Relief**

In his present petition, Hendrix asserts he is entitled to a writ of habeas corpus on the following grounds:

**GROUND ONE:** Ineffective Assistance of Counsel.

> **SUPPORTING FACTS:** [A] Ineffective for misadvising Petitioner he could plea[d] guilty and simultaneously direct appeal all pretrial issues, [B] Failing to file direct appeal, [C] Misadvising Petitioner conditional [guilty] pleas are allowed in South Carolina when they are not, [D] Failing to prepare for trial, [E] Failing to investigate and prepare for guilty plea, [F] Failing to move for specific performance of the guilty plea, [G] Failure to preserve appeal rights, [and] [H] Failure to withdraw plea.

3

**GROUND TWO**: Prosecutorial Misconduct

**SUPPORTING FACTS**: Petitioner was tried on the Indictment # 98-GS-40-35705 (murder) on April 19-23, 1999, ultimately a mistrial was declared based on [a] hung jury. Immediately thereafter the Prosecutor presented the new Indictment # 99-GS-40-40442 (lynching) because Petitioner exercised his right to trial. The face of the "lynching" indictment reflects the Prosecutor presented it to the Grand Jury on April 21, 1999, while Petitioner was on trial. This indictment was manufacture[d] to deter Petitioner' right to testify and right to appeal.

**GROUND THREE:** Prosecutorial Vindictiveness.

**SUPPORTING FACTS**: [A] The Prosecutor presented the new Indictment # 99-GS-40-40442 (lynching) in retaliation for Petitioner exercis[ing] his right to trial by jury, confrontation of witness rights and all of his other accompanying rights. [B] The prosecutor presented, knowingly, perjured testimony to deny Petitioner a fair trial, [C] denied Petitioner to have his pretrial motions considered by the trial judge without prosecutor's manipulation, [and [D] denied Petitioner his due process rights by knowing[ly] suppressing exculpatory evidence and evidence to impeach the prosecutor's witnesses.

**GROUND FOUR:** Due Process Violation.

**SUPPORTING FACTS:** Prosecution failed to disclose deals reached with Petitioner's co-defendants pursuant to Giglio and Brady v. Maryland. State officials tampering, manipulating, omitting record of appeals, state officials obstructing petitioner's right to fully develop his constitutional claims, insufficient evidence, refusal to quash the lynching 1st indictment, defective fatally indictment, denial of the ability to appeal pretrial issues, tricked and lied to get guilty plea, breach of guilty plea terms pursuant to Santebello v. New York, misrepresentation of guilty plea.

**Statute of Limitations**

Respondent asserts that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the Petitioner's conviction becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State

5

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399. A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted). "When a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a). Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The statute of limitations in § 2244(d) is not jurisdictional and is subject to the doctrine of equitable tolling. Holland v. Florida, __ U.S. __, 130 S.Ct. 2549 (2010). Equitable tolling applies only in "those rare instances where–due to circumstances external to the [Petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [Petitioner]." Harris, 209 F.3d at 330. Under § 2244(d), the State bears the burden of asserting the statute of limitations.

Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling. Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002). To benefit from the doctrine of equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" preventing him from timely filing. Pace, 544 U.S. at 418. An attorney's mistake in calculating the filing date for a habeas petition relative to the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Lawrence v. Florida, 549 U.S. 327, 336-337 (2007) ("Attorney miscalculation [of a deadline] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). *See also* Harris, 209 F.3d at 331.

Hendrix's conviction became final on June 25, 1999, when no appeal was filed following his guilty plea. He waited until May 9, 2000 (318 days) to file his PCR. The statute of limitations was tolled until June 29, 2009, when the Remittitur was returned by the South Carolina Supreme Court. Hendrix's *pro se* motion for reconsideration did not further toll the statute of limitations because, by the time it was filed, the South Carolina Supreme Court had lost appellate jurisdiction. Since the Supreme Court was without jurisdiction, Hendrix's *pro se* motion was not "properly filed" as required by 28 U.S.C. § 2244(d)(2). Therefore, the statute of limitations began to run again on June 29, 2009.

Hendrix did not address "Timeliness of Petition" in the space provided on page 14 of the petition. Further, Hendrix did not certify the date he delivered the petition for mailing to the prison authorities. However, the envelope in which the petition was received by the Court on August 26, 2009, shows that it was received by the prison mailroom on August 25, 2009. Using that date as the

7

date of filing of the petition, an additional 57 days of untolled time lapsed before the filing of the petition. The undersigned concludes that the petition is untimely because 375 days of untolled time lapsed between the date Hendrix's conviction became final and the date he filed his petition.

Hendrix has not disputed that his petition is untimely, nor has he sought to show that he is entitled to the benefit of equitable tolling.

**Procedural Bar**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

1. **Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the

> merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. *See* O'Sullivan v. Boerckel, 526 U.S. 838 (1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). *See* S.C. Code Ann. § 17-27-10 *et seq.* A PCR applicant is also required to state all of his grounds for relief in his application. *See*, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a

PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[1] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* Rose v.

---

[1] In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

Lundy, *supra*.

### 2. Procedural Bypass[2]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

---

[2]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

11

the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. **Inter-relation of Exhaustion and Procedural Bypass**

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4. **Excusing Default**

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances**.** Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally

12

barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show

13

prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

Since there was no direct appeal, the only issue presented by Hendrix which has been properly

exhausted is the single issue of ineffective assistance of trial counsel raised in the petition for writ of certiorari to the South Carolina Supreme Court following the denial of the PCR. Therefore, the undersigned will limit discussion to that issue.

### **Ineffective Assistance of Trial Counsel**

Hendrix asserts that Mr. Sneed misadvised him that he could raise pretrial issues on appeal following his guilty plea. (Ground 1.A. of the petition). This issue was raised in the PCR and rejected by the Court. The PCR court concluded that "(t)he record is devoid of any indication that counsel misadvised the Applicant regarding anything concerning his guilty plea." (App. 189-190). As indicated above, this issue was raised and rejected on appeal.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. *See* Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

A criminal defendant must be informed of the direct consequences of his plea. Misinformation as to the direct consequences of a plea renders the plea involuntary. Manley v. U.S.,

16

588 F.2d 79 (4th Cir. 1978) (erroneous statement of court as to maximum possible punishment). Neither the court nor defense counsel is obligated to advise a defendant as to the collateral consequences of a plea. Strader v. Garrison, 611 F.2d 61 (4th Cir. 1979) (parole eligibility is a collateral consequence of a plea). "The distinction between 'direct' and 'collateral' consequences of a plea...turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir. 1973).

At the PCR hearing, counsel for Hendrix explored the issue of whether or not Mr. Sneed discussed with Hendrix that by pleading guilty he would waive the right to appeal all non-jurisdictional issues. Mr. Sneed responded:

> I do not have a specific memory of that discussion with him. I can tell you that it is my general practice, or I shouldn't say general, every time when I would counsel a client for a plea, in Richland County we used the standard, we would call it waiver of rights form that listed 21 or 22 questions, and that was a tool so that the attorney wouldn't forget anything. And of course that would be complimented by the trial judge during the colloquy with the Defendant.
>
> So, anyway, I always would say you give up your right to an appeal by a guilty plea, you waive that right.

(App. 127).

Specifically, with respect to the waiver of right to appeal the adverse ruling on pretrial motions, Mr. Sneed conceded he had no specific recollection, but stated based on his general practice, "I'd like to think I did." (*Id*). The PCR court apparently credited this testimony in finding that Mr. Sneed was not ineffective in advising Hendrix on the appeal issue.

Since Hendrix filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d),

17

as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

18

The undersigned concludes that the state court's ruling was not contrary to, or an unreasonable application of, the Strickland test.

**Conclusion**

The present petition is untimely and summary judgment should be granted to Respondent on that basis. Even if the one ground that is properly before the Court is considered on the merits, Petitioner is not entitled to relief.

It is, therefore, recommended that Respondent's motion for summary judgment be **granted**, and that petition **dismissed** without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

July 27, 2010
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).